(May 30, 2013)

B&C REALTY, Co., Appellant, v 159 EMMUT PROPERTIES LLC et al., Respondents. [966 NYS2d 402]—

Order, Supreme Court, New York County (Barbara R. Kapnick, J.), entered March 16, 2012, which, insofar as appealed from, granted defendants' motion to dismiss the complaint and vacate the notice of pendency, unanimously modified, on the law, to dismiss the fourth cause of action for bad faith/breach of the implied covenant of good faith and fair dealing as against defendants 159 Emmut Properties LLC (159 Emmut) and John Young without prejudice, and otherwise affirmed, without costs.

This action arises out of a transaction in which defendant 159 Emmut agreed to sell, and plaintiff agreed to buy, premises located at 159 Bleecker Street in Manhattan. For the purpose of reviewing the motion to dismiss, we assume the truth of the following facts taken from the complaint and from the affidavit of plaintiff's architect submitted in opposition to the motion to dismiss (see Leon v Martinez, 84 NY2d 83, 88 [1994]). Plaintiff alleges that the sale was to take place in two phases. The first phase was to be an Internal Revenue Code (26 USC) § 1031 like-kind exchange in which plaintiff would buy a 7% fee interest in the premises; in the second phase, plaintiff would buy the remaining 93% interest.* According to the complaint, 159 Emmut represented that the property was a legally constructed, eight-story building, and that the eighth floor contained two legally constructed rental units.

As of December 31, 2008, plaintiff and 159 Emmut entered into a "3rd Amendment to Sale-Purchase Agreement" (the third amendment). The third amendment provided that plaintiff "shall not file a Lis Pendens against the Premises for any reason." Further, the third amendment stated that by January 6, 2009, 159 Emmut would transfer to plaintiff the undivided 7% interest in the property for a price of $2 million. The parties also agreed that if the closing on the other 93% interest did not take place by October 6, 2009, plaintiff would transfer its 7% interest back to 159 Emmut for zero consideration and would forfeit the $2 million. To that end, the parties recited that plaintiff had executed a deed to its 7% interest in the property (the return deed); if recorded, the return deed would reconvey to 159 Emmut plaintiff's 7% interest. The return deed was to be placed in escrow with 159 Emmut's counsel, who was authorized to deliver it to 159 Emmut immediately if the closing on the 93% did not occur.

---

* As the complaint makes clear, a third party was originally set to buy the 93% interest, but that third party later assigned his acquisition rights so that plaintiff could buy the entire fee interest. 159 Emmut and the original buyer amended their sales contract twice, but those amendments are not at issue on this appeal.

Further, pursuant to the third amendment, plaintiff and 159 Emmut entered into a contract of sale for the 7% interest. In that contract of sale, dated January 6, 2009, the parties stated that neither party relied upon any statement not set forth in the contract, and that plaintiff agreed to take title "as is."

According to plaintiff, it discovered around January 2010 that the property exceeded the maximum permissible height of 75 feet and therefore did not comply with the applicable New York City Zoning Resolution. Plaintiff alleges that defendant Young, on behalf of defendants 159 Emmut and 530 Emmut Properties, Ltd. (530 Emmut), made numerous misrepresentations about the premises, including misrepresentations about why the building had not yet received a certificate of occupancy (C of O). In August 2010, the property received a final C of O; it listed the number of stories in the building as seven, not eight.

Plaintiff alleges that once it discovered the true facts about the property, it sought to rescind the sale and to recover the $2 million it had paid for the 7% fee interest. Plaintiff further alleges that it unsuccessfully sought to recover the return deed, which defendants filed after plaintiff failed to close on its remaining 93% interest.

The motion court properly dismissed the first through third causes of action—for fraudulent inducement, fraud, and promissory estoppel, respectively—against all defendants for lack of reasonable reliance, given the "as is" clause in the January 6, 2009 contract of sale between plaintiff and 159 Emmut (*see Danann Realty Corp. v Harris*, 5 NY2d 317, 319-323 [1959]; *see also Arfa v Zamir*, 76 AD3d 56, 59-60 [1st Dept 2010], *affd* 17 NY3d 737 [2011]). What is more, defendant 530 Emmut was not a signatory to either the third amendment or the January 6, 2009 contract of sale. Nor can it be held liable for 159 Emmut's obligations merely by virtue of its status as a member of 159 Emmut (*Matias v Mondo Props. LLC*, 43 AD3d 367, 367-368 [1st Dept 2007]).

Plaintiff's argument that defendants sheetrocked the entrance to the eighth floor, programmed the elevator to skip that floor, and installed a deceptive elevator floor designation panel that omitted the eighth floor, is unavailing. Plaintiff should have been alerted to the building's structure by, among other things, comparing the building's 15 temporary C of Os to the "as-built" plans, because the temporary C of Os all showed that the building had eight stories while the "as-built" plans indicated that the building had only seven stories (*see Danann*, 5 NY2d at 322; *Arfa*, 76 AD3d at 59-60).

Plaintiff cannot sustain a claim that it has been deprived of

the fruits of its contract with 159 Emmut. On the contrary, the Department of Buildings has issued a final C of O and has not issued any notices of violation for the building (*see Mason v 12/12 Realty Assoc.*, 158 AD2d 334, 335 [1st Dept 1990]). However, under certain circumstances, plaintiff might still be able to state a cause of action for breach of the implied covenant of good faith and fair dealing against 159 Emmut and Young. Therefore, we modify to make the dismissal of the fourth cause of action as against defendants 159 Emmut and Young without prejudice, rather than with prejudice.

The motion court properly dismissed plaintiff's sixth cause of action alleging conversion. As it accurately noted, to the extent plaintiff based that cause of action on an alleged conversion of its 7% fee interest in the premises, the claim must fail because a party may not sustain a claim for conversion of real property (*see Benn v Benn*, 82 AD3d 548, 550 [1st Dept 2011]).

Similarly, while a party can properly assert a claim for conversion of money (*Thys v Fortis Sec. LLC*, 74 AD3d 546, 547 [1st Dept 2010]) the $2 million cannot be the subject of a conversion claim here. Even accepting the truth of the allegations in the complaint, plaintiff does not allege that defendants wrongfully exercised dominion over those funds in derogation of plaintiff's ownership (*Thyroff v Nationwide Mut. Ins. Co.*, 8 NY3d 283, 288-289 [2007] [conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights]). On the contrary, by alleging that it agreed to, and did, transfer the funds in return for the 7% interest in the property, plaintiff tacitly concedes that possession of the money was authorized. Plaintiff also states in the complaint that it executed the return deed and placed it in escrow specifically so that 159 Emmut would have the ability to file it immediately if the closing for the 93% did not take place. As plaintiff avers, this eventuality did, in fact, come to pass. Further, as plaintiff also avers, these events all took place in the course of the parties' agreement, so that 159 Emmut's possession of the funds was not "without authority" (*Colavito v New York Organ Donor Network, Inc.*, 8 NY3d 43, 50 [2006]).

Thus, plaintiff does not assert, in essence, that defendants interfered with plaintiff's ownership of the $2 million (*cf. Center for Rehabilitation & Nursing at Birchwood, LLC v S & L Birchwood, LLC*, 92 AD3d 711, 712 [2d Dept 2012] [in action regarding sale of a nursing facility, plaintiff alleged that defendant failed to remit accounts payable that were accrued before closing]). Rather, the complaint alleges that defendants took the

$2 million under false pretenses, knowing all the while that the building did not conform to the proper zoning standards and thus might not receive a final C of O. If anything, plaintiff's allegations either duplicate the dismissed fraud claim, or they amount to a claim that defendants intentionally deprived it of the benefit of its bargain.

The motion court properly dismissed the seventh cause of action for economic duress. As far as we can tell from the record, there was no contract between the parties before the third amendment of December 31, 2008. Thus, before that date, defendants were not legally required to sell the 7% interest in the premises to plaintiff by January 6, 2009. Hence, plaintiff's claim that it entered into the third amendment because of defendants' threats not to sell the 7% interest by January 6 fails to state a cause of action (*see 805 Third Ave. Co. v M.W. Realty Assoc.*, 58 NY2d 447, 453 [1983]).

The court properly vacated plaintiff's notice of pendency. The third amendment states that plaintiff "shall not file a Lis Pendens against the Premises *for any reason*" (emphasis added), not "for any reason having to do with the return deed." "[W]hen parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms" (*Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470, 475 [2004] [internal quotation marks omitted]). This rule is especially important "in the context of real property transactions" (*id.* [internal quotation marks omitted]).

We have considered plaintiff's remaining arguments and find them unavailing. Concur—Gonzalez, P.J., Mazzarelli, Moskowitz, Renwick and Manzanet-Daniels, JJ.